**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THOMAS G.,<br><br>                   Plaintiff,<br><br>                   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                   Defendant. | Civil Action No. 24-10491 (MAS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiff Thomas G.'s ("Plaintiff")[1] appeal of the Commissioner of the Social Security Administration's (the "Commissioner") final decision denying his request for disability insurance benefits ("DIB") under Title II of the Social Security Act. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons below, the Court affirms the Commissioner's decision.

## I.    BACKGROUND

In this appeal, the Court must determine whether substantial evidence supports the Administrative Law Judge's ("ALJ") finding that Plaintiff was not disabled and could perform a limited range of sedentary work. (Pl.'s Moving Br. 4-5, ECF No. 7.) The Court begins with a brief background of the procedural posture and decision by the ALJ.

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Ord. 2021-10.

A.    **Procedural Posture**

Plaintiff filed an application for DIB on March 24, 2022, alleging a disability onset date of November 9, 2021. (AR 11, 399, 465, ECF No. 4.)[2] The Social Security Administration (the "Administration") denied the request both initially and on reconsideration. (*Id.*) Thereafter, Plaintiff requested a hearing (*id.* at 344), and the ALJ virtually conducted that hearing on July 5, 2023 (*id.* at 281-302). The ALJ issued a written opinion, where he determined that Plaintiff was not disabled during the relevant period and could perform a limited range of sedentary work. (*Id.* at 8-25.) Plaintiff appealed that decision, and the Administration's Appeals Council affirmed the ALJ's decision. (*Id.* at 1-6.) This appeal followed. (ECF No. 1.) Plaintiff filed his moving brief on April 14, 2025. (Pl.'s Moving Br.) The Commissioner opposed (ECF No. 9), and Plaintiff replied (ECF No. 10).

B.    **The ALJ's Decision**

In his December 21, 2023 decision, the ALJ concluded that Plaintiff was not disabled from November 9, 2021 through the date of the decision. (AR 19.) The ALJ set forth the five-step process for determining whether an individual is disabled. (*Id.* at 12-13 (citing 20 C.F.R. § 404.1520(a)).) At step one, the ALJ found that Plaintiff had not "engaged in substantial gainful activity" since the alleged onset date of November 9, 2021. (*Id.* at 13.) At step two of the analysis, the ALJ found that Plaintiff suffered from several severe impairments, including spinal stenosis, degenerative disc disease with radiculopathy, carpal tunnel syndrome, status post trigger thumb release, bilateral epicondylitis, and obesity. (*Id.*) The ALJ concluded that Plaintiff's other physical impairments, including his cataract, normal-mild sensorineural sloping hearing loss, diabetes,

---

[2] The Administrative Record ("AR") is found at ECF No. 4. The Court will reference the relevant pages of the AR and will not reference the corresponding ECF page numbers within those files.

hypertension, and overactive bladder, were not severe because they did not significantly limit Plaintiff's ability to perform basic work activities. (*Id.* at 14.) The ALJ also found that Plaintiff's mental impairment of adjustment disorder with depression was not severe because it did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities. (*Id.*)

At step three of the analysis, the ALJ determined that Plaintiff did not have "an impairment . . . or combination of impairments" that qualified under one of the listed impairments in 20 CFR § 404, Subpart P, Appendix 1. (*Id.* at 15 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).) The ALJ then found that Plaintiff possessed the residual functional capacity ("RFC") to:

> [P]erform sedentary work . . . except he can[:] never climb ropes, ladders, or scaffolds; never be exposed to unprotected heights; occasionally climb stairs and ramps; never crawl; occasionally kneel; occasionally stoop and crouch; frequent[ly] reach[], feel[], finger[], and handl[e]; [and] occasionally balance[.] [He] needs to have proximate access to restroom facilities; [and he] can stand or change position being off task less than 5% of the workday.

(*Id.* at 16.) At step four of the analysis, the ALJ found that Plaintiff could perform past relevant work as a Chief Financial Officer. (*Id.* at 14.) Because the ALJ found that Plaintiff could perform past relevant work, the ALJ did not reach step five of the analysis.[3] (*Id.*)

This appeal turns on the ALJ's assessment of the severity of Plaintiff's mental impairments and determination of Plaintiff's RFC. (*See generally* Pl.'s Moving Br.) Specifically, Plaintiff argues that the ALJ improperly found that Plaintiff's mental impairments were not severe and that the ALJ failed to adequately consider Plaintiff's subjective testimony. (*Id.* at 4, 17-27.) The Court must therefore resolve whether the ALJ's decision is supported by substantial evidence and adequately explained.

---

[3] If step four is answered in the affirmative, the ALJ need not progress to step five of the analysis. 20 C.F.R. § 404.1520.

II.     **LEGAL STANDARD**

A.      **Standard of Review**

On appeal from the final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "'may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In reviewing the record for substantial evidence, the court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks omitted). Even if the court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether

the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (citation omitted).

**B.    Establishing Disability**

To be eligible for insurance benefits, claimants must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). Under the statute, claimants are disabled only if their physical or mental impairments are "of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

Administration regulations provide a five-step evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(4). For the first step, claimants must establish that they have not engaged in any substantial gainful activity since the onset of their alleged disabilities. *Id.* § 404.1520(a)(4)(i). For the second step, claimants must establish that they suffer from a "severe . . . physical or impairment" or "combination of impairments." *Id.* § 404.1520(a)(4)(ii). Claimants bear the burden of establishing the first two requirements, and failure to satisfy either one results in a denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The third step requires that claimants provide evidence that their impairments are equal to at least one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1522(a). If claimants demonstrate that they suffer from a listed impairment or that their severe impairment is

equal to a listed impairment, they are presumed to be disabled and entitled to disability insurance benefits. *Id.* If they cannot so demonstrate, the eligibility analysis proceeds to step four. The fourth step of the analysis requires the ALJ to determine whether claimants' RFCs permit them to resume previous employment. *Id.* § 404.1520(e). If claimants' RFCs permit previous employment, claimants are not "disabled" and thus not entitled to disability insurance benefits. *Id.* § 404.1520(f). The burden of persuasion rests with claimants in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009). At the fifth step, the burden shifts to the Commissioner to demonstrate that claimants can perform other work consistent with their medical impairments, age, education, past work experience, and RFC. 20 C.F.R. § 404.1520(g). If the Commissioner cannot satisfy this burden, claimants will receive disability insurance benefits. *Id.*

## III.    <u>DISCUSSION</u>

Plaintiff alleges that the ALJ's decision is not supported by substantial evidence. (Pl.'s Moving Br. 17-27.) Specifically, Plaintiff contends that the ALJ: (1) erred in finding that Plaintiff's mental impairments were not severe; and (2) failed to adequately consider Plaintiff's subjective testimony in evaluating Plaintiff's RFC. (*Id.*) The Court finds neither of these arguments availing and addresses each alleged error in turn.

### A.    **The ALJ Did Not Err in Finding Plaintiff's Adjustment Disorder with Depression Was Not Severe**

Plaintiff first argues that the ALJ erred at step two of the analysis in determining that Plaintiff's mental impairment of adjustment disorder with depression was not severe. (Pl.'s Moving Br. 17-24.)

According to the Commissioner's regulations, an impairment or combination of impairments are "not severe" if they do not "significantly limit [the claimant's] physical ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities are defined as "abilities

and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) (quotation omitted); *see also* 20 C.F.R. §§ 140.1522(b)(1), 140.1522(b)(2).

When evaluating the severity of a mental impairment, the ALJ must assess the plaintiff's limitations in four functional areas: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). In the first functional area, the ALJ found that Plaintiff had a mild limitation. (AR 15.) The ALJ considered Plaintiff's Wechsler Memory Scale-Fourth Edition ("WMS-IV") test results which showed that his performance was in the average range. (*Id.* 14 (citing AR 1005-1027).) Moreover, the ALJ noted that the consultative psychological evaluation stated that Plaintiff was alert and oriented, and could engage in cognitive tasks such as naming the two current and former presidents, spelling forward and backwards, and remembering numbers in various sequences. (*Id.* at 14 (citing AR 1348).) In the second functional area, the ALJ found that there was no limitation, as Plaintiff's treatment notes and personal reports described him as cooperative and able to socialize with others. (*Id.* at 14; *see* AR 1386-1437.)

In the third functional area, the ALJ found that Plaintiff had a mild limitation, citing Wechsler Adult Intelligence Scale-IV ("WAIS-IV") test results that showed that his attention and concentration were in the low average range, and the consultative psychological evaluation, which showed that he was alert and oriented, and had intact cognitive skills. (*Id.* at 14-15; *see* AR 1005-1027, 1347-1349.) Finally, the ALJ found a mild limitation in the fourth functional area. (*Id.* at 15.) The ALJ cited Plaintiff's self-reported ability to drive his children to school and do light chores, and his ability to carry out grooming and hygiene-related tasks with limited aid, while also noting that Plaintiff had mild limitations because he used a tool to "reach to put on certain articles

of clothing" and keep his shoes tied. (*Id.*) Considering the evidence together, the ALJ concluded that Plaintiff's medically determinable mental impairment caused no more than a mild limitation in the four functional areas, and thus was not severe. (*Id.*)

Plaintiff argues that the ALJ erred in concluding that his mental impairment was not severe because the ALJ did not adequately consider the evidence, namely, the opinions of Dr. Keane, a physician at Shore Neuropsychology & Behavioral Health, and of Mallory LaCorte ("Ms. LaCorte"), a licensed professional counselor at Comprehensive Counseling Center, LLC. (Pl.'s Moving Br. 19-20.) The Court is not so persuaded. To the extent Plaintiff alleges that the ALJ failed to cite specific medical evidence or testimony in reaching his determination, it is well established that an ALJ "need not mention every piece of evidence in the record." *Beety-Monticelli v. Comm'r of Soc. Sec.*, 343 F. App'x 743, 747 (3d Cir. 2009); *Fargnoli v. Halter*, 247 F.3d 34, 42 (3d Cir. 2001) (explaining that an ALJ is not required to "make reference to every relevant treatment note" where the claimant has voluminous medical records); *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004) (emphasis omitted) (finding that the ALJ did not err in failing to specifically discuss x-rays showing degeneration of plaintiff's spine because the ALJ "sufficiently addressed the medical evidence" and "the court . . . [does] not expect the ALJ to make reference to every piece of relevant information").

Nonetheless, here, the ALJ explicitly considered and referenced both Dr. Keane's and Ms. LaCorte's reports. (*See, e.g.*, AR 14, 19 (discussing records authored by Dr. Keane and Ms. LaCorte).) With respect to Dr. Keane's reports, the ALJ considered the WMS-IV and WAIS-IV exams that Dr. Keane administered, and discussed Dr. Keane's findings, including that Plaintiff's "attention and concentration were in the low average range" and that Plaintiff's performance in understanding, remembering, and applying information was in the "average range." (AR 14 (citing

8

AR 1017).) While Plaintiff contends that the ALJ failed to consider specific statements in Dr. Keane's reports, including Plaintiff's "memory loss and chronic pain syndrome," Dr. Keane administered the WMS-IV and WAMS-IV exams to measure Plaintiff's reported memory loss and pain, and thus by referencing the objective results of these exams, the ALJ implicitly considered these conditions. (*See* Pl.'s Moving Br. 19, 26; AR 1005-1025.) Based on his review of the record, the ALJ concluded that "[a]lthough the claimant is treated with therapy, [his] mental status evaluations are consistently within normal limits." (AR 14). This conclusion is consistent with Dr. Keane's notes, and with the medical record as a whole.  (*See, e.g.*, AR 1019 (concluding that Plaintiff's neuropsychological evaluation results "did not evidence significant impairment on measures of language, attention, memory, visual perception and executive functions when compared to his same aged peers" and that "[t]here was no evidence of [a] steady, progressive decline in memory and learning"); *see also* AR 1012, 1024, 1387, 1393, 1431 (reporting normal mental impairments); AR 1520-1521 (noting that Plaintiff was alert and oriented, with intact memory and judgment).)

Moreover, with respect to the opinions of Ms. LaCorte, the ALJ considered her opinions, but ultimately rejected some of them as "extreme" and not supported by the record evidence. (AR 19.) An ALJ can properly "choose whom to credit" and reject a treating physician's opinion if "such rejection is based on contradictory medical evidence." *Becker*, 403 F. App'x at 686. Here, there was medical evidence in the record that contradicted the opinions of Ms. LaCorte, and thus the ALJ was warranted in choosing to reject Ms. LaCorte's opinions. (*Compare* AR 17 (discussing the opinion of Dr. Kagan which stated that Plaintiff was able to "sit comfortably on an examination table without difficulty or evidence of pain"), *with id.* at 19 (discussing Ms. LaCorte's testimony that Plaintiff was "unable to sit or stand for any duration of time").) Moreover, as the ALJ correctly

noted, Ms. LaCorte is not considered an "acceptable medical source" pursuant to 20 C.F.R. § 404.1513(a), and thus it was within the ALJ's statutory authority to afford Ms. LaCorte's opinions less credit. (AR 19); *see Daly v. Astrue*, No. 09-319, 2011 WL 778207, at *1 n.1 (W.D. Pa. Mar. 1, 2011) (explaining that "a licensed professional counselor" is "not an acceptable medical source"); *Hopkins v. Comm'r of Soc. Sec.*, 813 F. App'x 775, 779 (3d Cir. 2020) (affirming the district court's denial of a claimant's appeal where the ALJ gave no weight to the opinion of a licensed therapist who was not an "acceptable medical source").

After carefully reviewing the ALJ's decision and findings, the Court finds that the medical evidence, taken as a whole, supports the ALJ's finding that Plaintiff's mental impairment was not severe. In reaching his conclusion, the ALJ sufficiently addressed the medical evidence, including reports from both Dr. Keane and Ms. LaCorte. Accordingly, the ALJ did not err in determining that Plaintiff's mental impairment of adjustment disorder with depression had no more than a minimal effect on his ability to work.[4]

### B. The ALJ's RFC Determination Is Supported by Substantial Evidence.

The Court next addresses Plaintiff's challenge to the ALJ's RFC determination. Plaintiff argues that the ALJ failed to adequately consider Plaintiff's subjective complaints of pain in assessing Plaintiff's RFC. (Pl.'s Moving Br. 25-27.)

Pursuant to Social Security Ruling ("SSR") 16-3p, an ALJ must conduct a two-step process to evaluate a claimant's pain or other symptoms. SSR 16-3p, 82 Fed. Reg. 49,462, 49,463 (Oct.

---

[4] Even assuming, arguendo, that the ALJ erred in finding that Plaintiff's mental impairment was not severe at step two of the analysis, such an error would be harmless because the ALJ proceeded to step three of the analysis. *See Vanessa T-H. v. Comm'r of Soc. Sec.*, No. 23-2293, 2024 WL 1635685, at *4 (D.N.J. Apr. 16, 2024) (citing *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("It is well established that any omission of an impairment at step two is harmless error, provided that the ALJ determines that the claimant has at least one severe impairment and continues onto the subsequent steps of the sequential analysis.")

25, 2017). First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce an individual's symptoms, such as pain. *Id.* Second, if an underlying physical or mental impairment has been established, the ALJ must evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms could limit an individual's ability to perform work. *Id.* During this second step, the ALJ may consider a wide range of evidence, including objective medical evidence, the claimant's statements regarding their symptoms, subjective medical evidence, including diagnosis, prognoses, and opinions, any available non-medical source evidence, and other factors if they are relevant to the case. *Id.* The ALJ looks for consistency among the evidence to support—or conversely, inconsistency among the evidence to rebut—a claimant's assertion that the intensity, persistence, and limiting effects of his or her symptoms reduced the claimant's capacity to perform work-related activities. *Id.* Moreover, an ALJ has "wide discretion to weigh the claimant's subjective complaints" and may "discount them where they are unsupported by other relevant objective evidence." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (citing 20 C.F.R. § 416.929(c)).

In the instant case, the ALJ followed this prescribed method when considering the intensity, persistence, and limiting effects of Plaintiff's symptoms. First, at step one, the ALJ outlined Plaintiff's alleged impairments and associated symptoms in a thorough review of Plaintiff's medical examinations in the record, including his complaints, treatments, and outcomes. (AR 16-18.) Next, at step two, the ALJ reviewed a wide range of evidence and found that while Plaintiff's determinable impairments reasonably could have caused his alleged symptoms, his statements about the intensity, persistence, and limiting effects of those impairments and their related symptoms were not consistent with the evidence. (*Id.* at 18.) For example, the ALJ noted

that the psychological consultants from Disability Determination Services ("DDS") determined that Plaintiff does not have a severe mental impairment, and that the medical consultants from DDS determined that Plaintiff is able to engage in certain physical activities, including lifting and carrying ten pounds, standing and walking for four hours, and sitting for six hours. (AR 18.) While the examples provided do not include all of the evidence that the ALJ considered, they illustrate the basis of his determination that Plaintiff's subjective symptoms and complaints were inconsistent with the record evidence. *See Malloy*, 306 F. App'x at 765 (citation omitted) (holding that an ALJ's "[c]redibility determinations as to a claimant's testimony regarding pain and other subjective complaints" are entitled to "great weight" given the ALJ's "opportunity to observe the demeanor and [] determine the credibility of the claimant").

Based on a complete review of the record, the Court finds that the ALJ properly considered Plaintiff's subjective complaints of pain in assessing Plaintiff's RFC. Accordingly, the Court finds that the ALJ's finding that Plaintiff could perform a limited range of sedentary work is supported by substantial evidence. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) ("Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

IV.    **CONCLUSION**

For the foregoing reasons, the Court affirms the Commissioner's final decision. An Order consistent with this Memorandum Opinion will be entered.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE